ORIGINAL

1   GLYNN & FINLEY, LLP
    ADAM FRIEDENBERG, Bar No. 205778
2   One Walnut Creek Center
    100 Pringle Avenue, Suite 500
3   Walnut Creek, CA 94596
    Telephone: (925) 210-2800
4   Facsimile: (925) 945-1975

5   Attorneys for Evraz Inc. NA

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  EVRAZ INC. NA,                          )   Case No. **C11-03624 EDL**
                                            )
12            Plaintiff,                     )   **PLAINTIFF EVRAZ INC. NA'S**
                                            )   **COMPLAINT FOR BREACH OF**
13      vs.                                  )   **CONTRACT AND DECLARATORY**
                                            )   **RELIEF**
14  REMEDY INTELLIGENT STAFFING,            )
    INC., dba REMEDY PERSONNEL              )   (JURY TRIAL DEMANDED)
15  SERVICES, and SELECT PERSONNEL          )
    SERVICES, INC., dba SELECT              )
16  STAFFING,                               )
                                            )
17            Defendants.                    )
                                            )
18

19          Plaintiff Evraz Inc. NA ("Plaintiff") sues Defendants Remedy Intelligent Staffing,

20  Inc., dba Remedy Personnel Services ("Remedy"), and Select Staffing Personnel Services, Inc.,

21  dba Select Staffing ("Select") (collectively, "Defendants") and alleges as follows:

22          1.      This action is for breach of contract and declaratory relief.  Defendants are

23  temporary staffing firms that provided temporary employees to Plaintiff.  Pursuant to the parties'

24  explicit written agreements, Defendants were obligated to defend and indemnify Plaintiff against

25  any claims for injury or death (including, but not limited to, workers' compensation claims)

26  made by any such temporary employees arising out of their work for Plaintiff.  Defendants have

27  ignored and breached their unambiguous contractual obligation to Plaintiff, thus causing

28  substantial past, present and future harm to Plaintiff.

                                          - 1 -

**THE PARTIES**

2.     Plaintiff is a Delaware corporation with its principal place of business in Illinois.  Plaintiff is the successor in interest to Oregon Steel Mills and Napa Pipe Corporation.

3.     Plaintiff is informed and believes and thereon alleges that Defendants are both California corporations with their principal place of business in California.

**JURISDICTION**

4.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 as complete diversity of citizenship exists and the amount in controversy is more than $75,000, exclusive of interest and costs.

5.     This Court has personal jurisdiction over Defendants as they are both domiciled within California.

**VENUE**

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as jurisdiction is founded on diversity of citizenship and a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this judicial district.

**INTRADISTRICT ASSIGNMENT**

7.     Pursuant to Northern District of California, Civil Local Rule 3-2(c), assignment of this action to the San Francisco or Oakland Division of this Court is appropriate as a substantial part of the events which give rise to this action occurred in Napa County, California.

**GENERAL ALLEGATIONS**

8.     Throughout the 1990s and 2000s, Plaintiff entered a succession of contracts with Defendants (and their related entities).  Pursuant to these contracts, Defendants provided to Plaintiff pre-screened applicants for temporary employment assignments at Plaintiff's Napa, California steel production facility.

9.     The first of these contracts was entered by Plaintiff and Remedy on January 17, 1995.  A true and correct copy of this contract (referred to herein as the "1995 Agreement") is attached hereto as **Exhibit A**.  The parties entered subsequent contracts in 2001

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

1    (the "2001 Agreement") and 2006 (the "2006 Agreement").  True and correct copies of the 2001

2    and 2006 Agreements are attached hereto as **Exhibit B** and **Exhibit C**, respectively.  The 1995,

3    2001 and 2006 Agreements are referred to collectively herein as the "Agreements."  Defendants

4    are informed and believe and thereon allege that Select is an assignee of the 1995, 2001 and

5    2006 Agreements or has otherwise assumed liability for their performance.

6              10.    Under the 1995 Agreement,

7            [t]emporary employees provided by Remedy Personnel Services shall at
             all times be considered primary, general employees of Remedy Personnel
8            Services, and secondary, special employees of Napa Pipe, it being the
             intent hereof that the worker's compensation benefits referred to in
9            Section 5.2.1 shall be such temporary employee's [sic] sole remedies for
             bodily harm or death resulting from injury related to such employee's
10           work for Napa Pipe, or any of its on-premises subcontractors.

11   (Ex. A at § 1.3.)  Section 5.2.1 required, *inter alia*, that Defendants maintain, and name Plaintiff

12   as an additional insured under workers' compensation insurance policies with coverage limits of

13   at least $1,000,000 "per accident."  The 2001 and 2006 Agreements include substantively similar

14   provisions.

15             11.    The 1995 Agreement further provides that

16           Remedy Personnel Services shall defend, protect, indemnity and save
             [Napa Pipe] . . . harmless from and against all claims, demands, costs
17           (including attorney's fees) and cause of action for injury to or death of any
             temporary employee at or around Napa Pipe's property, including any
18           temporary employee assigned to or working for any Napa Pipe
             subcontractor or any other entity doing business on Napa Pipe's premises,
19           and for injury to or death of any other person, or for loss of or damage to
             any property, arising out of or connected in any way with the acts or
20           omissions of Remedy Personnel Services's agents or employees. . . .

21   (Ex. A at § 5.1.)  The 2001 and 2006 Agreements include similar indemnity provisions.

22             12.    During the term of the Agreements, certain temporary employees provided

23   by Defendants to Plaintiff pursuant to the Agreements made various workers' compensation

24   claims arising from injuries allegedly sustained during their work at Plaintiff.  Thus, Plaintiff has

25   tendered defense of these claims to Defendants and requested that they indemnify plaintiff.

26             13.    Although Defendants initially acknowledged their contractual

27   responsibility to provide defense and indemnity, Defendants have since refused to continue to

28   provide the required defense and indemnity to Plaintiff.  As a result, Plaintiff has been forced to

- 3 -
COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

1   act to protect its interests, including by defending the claims (and incurring consequent defense

2   costs) and funding settlement and award payments to certain claimants.  Various workers'

3   compensation claims remain unresolved and ongoing, and thus with each day that Defendant

4   denies its clear contractual responsibilities to Plaintiff, Plaintiff continues to suffer additional

5   damage.

6                                          **FIRST CLAIM FOR RELIEF**

7                                            **(Breach of Contract)**

8                   14.     Plaintiff repleads and incorporates the allegations of paragraphs 1 through

9   13 above, as though fully set forth herein.

10                  15.     The conduct of Defendants alleged above was a breach of the Agreements.

11                  16.     Plaintiff has fully performed all conditions, covenants and promises

12  required of it under the Agreements.

13                  17.     As a result of Defendants' breaches of the Agreements, Plaintiff has been

14  damaged in an amount to be proven at trial.

15                                         **SECOND CLAIM FOR RELIEF**

16                                            **(Declaratory Relief)**

17                  18.     Plaintiff repleads and incorporates the allegations of paragraphs 1 through

18  17 above, as though fully set forth herein.

19                  19.     An actual controversy has arisen and now exists between Plaintiff and

20  Defendants concerning their respective rights and duties under the Agreements, in that Plaintiff

21  contends it is entitled to defense and indemnity (including, but not limited to, reimbursement of

22  defense costs, settlement and award payments and other appropriate amounts hereafter incurred

23  with respect to the subject workers' compensation claims) under the Agreements, and

24  Defendants deny their obligation to provide such defense and indemnity.  This controversy is

25  prospective, as the workers' compensation claims at issue are ongoing.

26                  20.     Declaratory relief is therefore necessary and appropriate at this time so

27  that the parties may ascertain their rights and duties with respect to the Agreements.

28  / / /

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For compensatory damages according to proof as pleaded above;

2.     For a declaration that Defendants must defend and indemnify Plaintiff against the workers' compensation claims at issue, including, but not limited to, reimbursing Plaintiff all defense costs, settlement and award payments and other appropriate amounts hereafter incurred;

3.     For an award of Plaintiff's reasonable attorneys' fees and costs of suit herein under the Agreements and to the extent otherwise permitted by law;

4.     For prejudgment interest; and

5.     For such other and further relief as the court may deem just and proper.


Dated: July 22, 2011

GLYNN & FINLEY, LLP
ADAM FRIEDENBERG
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA  94596


By _____
Attorneys for Plaintiff
Evraz Inc. NA

- 5 -
COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

1

### DEMAND FOR JURY TRIAL

2      Plaintiff demands a trial by jury on all claims so triable.

3

4      Dated: July 22, 2011

5                                          GLYNN & FINLEY, LLP
                                           ADAM FRIEDENBERG
6                                          One Walnut Creek Center
                                           100 Pringle Avenue, Suite 500
7                                          Walnut Creek, CA  94596

8
                                     By _____
9                                          Attorneys for Plaintiff
                                           Evraz Inc. NA
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -
COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

EXHIBIT A

# EXHIBIT A

## TEMPOI Y EMPLOYMENT SERVIC CONTRACT

This Contract is made and entered into by and between NAPA PIPE CORPORATION, a Delaware corporation, mailing address 1025 Kaiser Road, Napa, CA 94558 and Remedy Personnel Services, mailing address 1500 Oliver Rd., Suite G, Fairfield, CA 94533. The parties agree as follows:

### ARTICLE 1
### SCOPE OF WORK

**Section 1.1**    Remedy Personnel Services shall, upon notification by Napa Pipe, furnish pre-screened applicants for temporary employment work assignments in the categories of office worker, production worker and maintenance worker.  Acceptance or rejection of any such offered applicants shall be at the sole discretion of Napa Pipe.

**Section 1.2**    Remedy Personnel Services shall perform pre-hire screening with respect to basic qualifications, work history, references and drug tests as specified in Section 6.4 below. Napa Pipe in its sole discretion shall determine the competency and qualifications of all applicants and employees furnished by Remedy Personnel Services.  The work direction and supervision for all temporary employees furnished by Remedy Personnel Services shall be the sole responsibility of Napa Pipe.  If Napa Pipe, in its sole discretion, determines that the employment or presence of Remedy Personnel Services's employee is no longer required, or is detrimental to the performance of the work or to Napa Pipe's operations, Remedy Personnel Services shall, upon notification by Napa Pipe, immediately terminate such employee's assignment with Napa Pipe.

**Section 1.3**    Temporary employees provided by Remedy Personnel Services pursuant to contract shall at all times be considered primary, general employees of Remedy Personnel Services, and secondary, special employees of Napa Pipe, it being the intent hereof that the worker's compensation benefits referred to in Section 5.2.1 shall be such temporary employee's sole remedies for bodily harm or death resulting from injury related to such employee's work for Napa Pipe, or any of its on-premises subcontractors. Remedy Personnel Services represents and warrants that prior to providing each temporary employee for employment on Napa Pipe's premises, Remedy Personnel Services shall have informed such employee of the exclusivity of worker's compensation remedies, shall have provided such employee with worker's compensation information or pamphlets as required by the state statute as well as information on where, how and to whom job related illness/injury reports are to be made.

-1-

## ARTICLE 2

## COMPENSATION: PAYMENT

**Section 2.1**       Napa Pipe shall pay Remedy Personnel Services the applicable direct labor rate plus a mark-up rate which shall be established by mutually agreed separate schedule. Remedy Personnel Services shall pay each of their employees employed on Napa Pipe's premises not less than the mutually agreed upon hourly rate.   Remedy Personnel Services represents that the compensation provided for herein covers all costs of employment including without limitation with respect to federal, state and local taxes, other mandated contributions, worker's compensation and contractor's overhead and profit.

**Section 2.2**       Remedy Personnel Services shall on a weekly basis deliver or cause to be delivered to the premises of Napa Pipe, payroll checks for each of its furnished employees who have not otherwise given Remedy Personnel Services check distribution instructions.  Such checks shall be delivered at least two hours before the end of the Friday day shift period.

**Section 2.3**       Remedy Personnel Services' invoicing shall not be more often than weekly and all such invoices shall be accompanied by an hours/cost report in the form and content prescribed by Napa Pipe.  The verified invoices will be paid by Napa Pipe within fifteen (15) days of receipt of invoice.

## ARTICLE 3

## TERM OF AGREEMENT

**Section 3.1**       This Contract shall become effective on the date of execution and shall continue in full force and effect until such time as either party serves written notice on the other of their intent to terminate the agreement.  Such notice shall, however, be given not less than thirty (30) days prior to the effective date of such termination.

## ARTICLE 4

## NON-EXCLUSIVITY

**Section 4.1**       Nothing contained herein shall be construed as limiting or restricting the right of the company to simultaneously contract with other contractors to provide temporary employees nor shall this Contract be considered a guarantee that all or any part of Napa Pipe's temporary help requirements will be obtained from the Remedy Personnel Services.

-2-

## ARTICLE 5
### INDEMNITY: INSURANCE

**Section 5.1**      Remedy Personnel Services shall defend, protect, indemnify and save NAPA PIPE CORPORATION, its directors, officers, agents and employees harmless from and against all claims, demands, costs (including attorney's fees) and causes of action for injury to or death of any temporary employee at or around Napa Pipe's property, including any temporary employee assigned to or working for any Napa Pipe subcontractor or any other entity doing business on Napa Pipe's premises, and for injury to or death of any other person, or for loss of or damage to any property, arising out of or connected in any way with the acts or omissions of Remedy Personnel Services's agents or employees, excluding liability for such injury, death, loss or damage arising from the sole negligence or willful misconduct of Napa Pipe or its employees or independent contractors or subcontractors.

**Section 5.2**      Remedy Personnel Services shall, at all times while providing applicants for work, or while its employees are performing work of any kind whatsoever, maintain in full force and effect, in form and with carriers acceptable to Napa Pipe, the following policies of insurance:

**Section 5.2.1**      Worker's Compensation in compliance with applicable state law, and Employer's Liability of at least One Million Dollars ($1,000,000.00) per accident and, where applicable, insurance in compliance with any other statutory obligation whether federal or state, pertaining to the compensation of injured employees, the foregoing endorsed with waiver of subrogation against Napa Pipe; and

**Section 5.2.2**      General Comprehensive Liability, Automotive Bodily Injury Liability, Automobile Property Damage Liability, Bodily Injury Liability (other than automobile) Property Damage Liability (other than automobile ) and contractor's Contractual Liability covering all liability assumed hereunder of not less of not less than One Million dollars ($1,000,000.00) per occurrence.

**Section 5.3**      The foregoing policies of insurance shall cover all operations of Remedy Personnel Services under subcontract and name NAPA PIPE CORPORATION as an additional insured.  Prior to providing services, Remedy Personnel Services shall forward to Napa Pipe certificates of insurance evidencing not less than the above coverage.  Said certificates shall be mailed to Napa Pipe and shall include the following statement:

> Thirty (30) days' written notice will be given to Napa Pipe Corporation, 1025 Kaiser Road, Napa, California 94588, before any cancellation and/or material change in this policy shall become effective.

## ARTICLE 6

## GENERAL TERMS AND CONDITIONS

**Section 6.1**      Remedy Personnel Services shall not discriminate against any employee or applicant for employment because of age, race, religion, color or natural origin, sex or handicap and Remedy Personnel Services will take affirmative action to insure that applicants are selected and insofar as Remedy Personnel Services's actions control, employees are treated during their employment without regard to their age, race, color, national origin, sex or handicap.

**Section 6.2**      In the event Remedy Personnel Services determines it necessary to advertise for prospective applicants, the cost of all such advertising shall be borne by Remedy Personnel Services provided, however, in no event shall Napa Pipe be in any way identified in such advertisement unless Remedy Personnel Services first obtains approval from Napa Pipe.

**Section 6.3**      Remedy Personnel Services shall counsel all prospective applicants and/or employees prior to dispatch to Napa Pipe with regard to their obligations to comply with all Napa Pipe safety, drug/alcohol and work policies, including the "Contractor/Customer Representative Safety and General Work Guideline" ("Guidelines") attached hereto and made a part hereof.

**Section 6.4**      All applicants or employees furnished by Remedy Personnel Services must, as a condition of employment, show proof of a recent (30 days or less) "clean" drug/alcohol screen.

**Section 6.5**      Remedy Personnel Services's employees who work continuously on Napa Pipe's premises shall, at Remedy Personnel Services's expense, receive a Baseline hearing test no later than 180 days from date first employed and annually thereafter.

**Section 6.6**      Napa Pipe shall provide each Remedy Personnel Services employee with the following safety equipment: hard hat, safety glasses, ear plugs, leather gloves and metatarsal guards.  Remedy Personnel Services will cooperate with Napa Pipe by insisting on proper care and utilization of all issued safety equipment and in the event a Remedy Personnel Services's employee quits or terminates without returning issued equipment to Napa Pipe, Remedy Personnel Services shall upon notification by Napa Pipe, use its best efforts to recover such unreturned items to include withholding payment for such items from employee's final monies due.

-4-

**Section 6.7**     Remedy Personnel Services shall comply with and shall encourage its employees to comply with the Guidelines attached hereto.

**Section 6.8**     Napa Pipe shall be free to recruit any temporary employee furnished by Remedy Personnel Services.  In the event any such employee is placed on Napa Pipe's direct payroll, there shall be no fee or service charges provided that such employee has continuously worked at Napa Pipe's facility for sixty (60) days.

**Section 6.9**     In the event Remedy Personnel Services requires vehicle access to Napa Pipe's facility to serve an onsite subcontractor or other business operation, Remedy Personnel Services and each of Remedy Personnel Services's representatives so requiring access shall (1) obtain a vehicle pass from Napa Pipe and (2) abide by the vehicle policy and all other policies contained in the Guidelines.

**Section 6.10**     Remedy Personnel Services shall not subcontract or otherwise transfer its obligations under this Contract to another agency, subsidiary or otherwise, without first obtaining Napa Pipe's prior written consent.  Failure to obtain such consent shall be deemed grounds for immediate termination of this Agreement.

**Section 6.11**     In the event of any dispute or litigation arising out of or in connection with this Agreement, the prevailing party in any settlement or judgment shall be entitled to receive reasonable attorney's fees from the non-prevailing party.

IN WITNESS WHEREOF, each party has executed this Contract as of the 17th day of January            , 199 5      .

REMEDY PERSONNEL SERVICES                NAPA PIPE CORPORATION

By _Rosemary Beck_                       By _Ror Brush_
Title _Vice President, Northern Region_  Title _Director HR_

Attachments:     Napa Pipe Corporation Contractor/Customer
                 Safety & General Work Guidelines

                 Remedy Personnel Services Classifications/Billing Rate

-5-

EXHIBIT B

# EXHIBIT B



# TEMPORARY EMPLOYMENT
# SERVICES CONTRACT

This Contract is made and entered into by and between OREGON STEEL MILLS (OSM), also referred to as Napa Pipe, a Delaware corporation, mailing address 1025 Kaiser Road; Napa, California 94558; and Remedy Intelligent Staffing (REMEDY), mailing address 4847 Hopyard Road, Suite D-1; Pleasanton, California 94588. The parties agree as follows:

## ARTICLE 1
## SCOPE OF WORK

**Section 1.1**   REMEDY shall, upon notification by OSM, furnish pre-screened applicants for temporary employment work assignments in the categories of office worker, production worker and maintenance worker. Acceptance or rejection of any such offered applicants shall be at the sole discretion of OSM.

**Section 1.2**   REMEDY shall perform pre-hire screening with respect to basic qualifications, work history, references and drug tests as specified in Section 6.4 below. OSM in its sole discretion shall determine the competency and qualifications of all applicants and employees furnished by REMEDY. The work direction and supervision for all temporary employees furnished by REMEDY shall be the sole responsibility of OSM. If OSM, in its sole discretion, determines that the employment or presence of a REMEDY employee is no longer required, or is detrimental to the performance of the work or to OSM's operations, REMEDY shall, upon notification by OSM, immediately terminate such employee's assignment at OSM.

**Section 1.3**   Temporary employees provided by REMEDY pursuant to contract shall at all times be considered primary, general employees of REMEDY, and secondary, special employees of OSM, it being the intent hereof that the worker's compensation benefits referred to in Section 5.2.1 shall be such temporary employee's sole remedies for bodily harm or death resulting from injury related to such employee's work for OSM, or any of its on-premises subcontractors.  REMEDY represents and warrants that prior to providing each temporary employee for employment on OSM's premises,  REMEDY shall have informed such employee of the exclusivity of worker's compensation  remedies,  shall  have  provided  such  employee  with  worker's

-1-



# TEMPORARY EMPLOYMENT SERVICES CONTRACT

compensation information or pamphlets as required by the state statute as well as information on where, how and to whom job related illness/injury reports are to be made.

## ARTICLE 2
## COMPENSATION: PAYMENT

**Section 2.1**   OSM shall pay REMEDY the applicable direct labor rate plus a mark-up rate which shall be established by mutually agreed separate schedule. REMEDY shall pay each of their employees employed on OSM's premises not less than the mutually agreed upon hourly rate. REMEDY represents that the compensation provided for herein covers all costs of employment including without limitation with respect to federal, state and local taxes, other mandated contributions, worker's compensation and contractor's overhead and profit.

**Section 2.2**   REMEDY shall on a weekly basis deliver or cause to be delivered to the premises of OSM, payroll checks for each of its furnished employees who have not otherwise given REMEDY check distribution instructions (direct deposit only). Such checks shall be delivered no later than 1:00 P.M. to the Employee Resources department on Thursday of each week.

**Section 2.3**   REMEDY invoicing shall not be more often than weekly and all such invoices shall be accompanied by an hours/cost report in the form and content prescribed by OSM.  The verified invoices will be paid by OSM within fifteen (15) days of receipt of invoice.

## ARTICLE 3
## TERM OF AGREEMENT

**Section 3.1**   This Contract shall become effective on the date of execution and shall continue in full force and effect until such time as either party serves written notice on the other of their intent to terminate the agreement.  Such notice shall, however, be given not less than thirty (30) days prior to the effective date of such termination.

-2-



# TEMPORARY EMPLOYMENT SERVICES CONTRACT

## ARTICLE 4
## NON-EXCLUSIVITY

**Section 4.1**   Nothing contained herein shall be construed as limiting or restricting the right of the company to simultaneously contract with other contractors to provide temporary employees nor shall this Contract be considered a guarantee that all or any part of OSM's temporary help requirements will be obtained from REMEDY.

## ARTICLE 5
## INDEMNITY: INSURANCE

**Section 5.1**   REMEDY shall defend, protect, indemnify and save OSM, its directors, officers, agents and employees harmless from and against all claims, demands, costs (including attorney's fees) and causes of action for injury to or death of any temporary employee at or around OSM's property, including any temporary employee assigned to or working for any OSM subcontractor or any other entity doing business on OSM's premises, and for injury to or death of any other person, or for loss of or damage to any property, arising out of or connected in any way with the acts or omissions of REMEDY agents or employees, excluding liability for such injury, death, loss or damage arising from the negligence or willful misconduct of OSM or its employees or independent contractors or subcontractors.

**Section 5.2**   REMEDY shall, at all times while providing applicants for work, or while its employees are performing work of any kind whatsoever, maintain in full force and effect, in form and with carriers acceptable to OSM, the following policies of insurance:

**Section 5.2.1**   Worker's Compensation in compliance with applicable state law, and Employer's Liability of at least One Million Dollars ($1,000,000.00) per accident and, where applicable, insurance in compliance with any other statutory obligation whether federal or state, pertaining to the compensation of injured employees, the foregoing endorsed with waiver of subrogation against Napa Pipe; and

-3-



# TEMPORARY EMPLOYMENT
# SERVICES CONTRACT

**Section 5.2.2** General Comprehensive Liability, Automotive Bodily Injury Liability, Automobile Property Damage Liability, Bodily Injury Liability (other than automobile) Property Damage Liability (other than automobile) and contractor's Contractual Liability covering all liability assumed hereunder of not less of not less than One Million dollars ($1,000,000.00) per occurrence.

**Section 5.3** The foregoing policies of insurance shall cover all operations of REMEDY under subcontract and name OSM as an additional insured and include a waiver of subrogation. Prior to providing services, REMEDY shall forward to OSM certificates of insurance evidencing not less than the above coverage. Said certificates shall be mailed to OSM and shall include the following statement:

> **Thirty (30) days' written notice will be given to OSM, 1025 Kaiser Road, Napa, California 94588, before any cancellation and/or material change in this policy shall become effective.**

# ARTICLE 6
# GENERAL TERMS AND CONDITIONS

**Section 6.1** REMEDY shall not discriminate against any employee or applicant for employment because of age, race, religion, color or natural origin, sex or handicap and REMEDY will take affirmative action to insure that applicants are selected and insofar as REMEDY actions control, employees are treated during their employment without regard to their age, race, color, national origin, sex or handicap.

**Section 6.2** In the event REMEDY determines it necessary to advertise for prospective applicants, the cost of all such advertising shall be borne by REMEDY provided, however, in no event shall OSM be in any way identified in such advertisement unless REMEDY first obtains approval from OSM.

-4-



# TEMPORARY EMPLOYMENT
# SERVICES CONTRACT

**Section 6.3**     REMEDY shall counsel all prospective applicants and/or employees prior to dispatch to OSM with regard to their obligations to comply with all OSM safety, drug/alcohol and work policies, including the "Contractor/Customer Representative Safety and General Work Guideline" ("Guidelines") attached hereto and made a part hereof.

**Section 6.4**     All applicants or employees furnished by REMEDY must, as a condition of employment, show proof of a recent (30 days or less) "clean" drug/alcohol screen. Background checks must include as a minimum: Social security number tracer, DMV printout, criminal background check for last seven years of residence (county and federal), work history and references.

**Section 6.5**     REMEDY employees who work continuously on OSM's premises shall, at REMEDY expense, receive a Baseline hearing test no later than 180 days from date first employed and annually thereafter.

**Section 6.6**     OSM shall provide each REMEDY employee with the following safety equipment: hard hat, safety glasses, ear plugs, leather gloves, metatarsal guards and all other personal protective equipment deemed necessary by OSM for the safe performance of the employee's job duties. REMEDY will cooperate with OSM by insisting on proper care and utilization of all issued safety equipment and in the event a REMEDY employee quits or terminates without returning issued equipment to OSM, REMEDY shall upon notification by OSM, use its best efforts to recover such unreturned items to include withholding payment for such items from employee's final monies due.

**Section 6.7**     REMEDY shall comply with and shall encourage its employees to comply with the Guidelines attached hereto.

**Section 6.8**     OSM shall be free to recruit any temporary employee furnished by REMEDY In the event any such employee is placed on OSM 's direct payroll, there

-5-



# TEMPORARY EMPLOYMENT
# SERVICES CONTRACT

shall be no fee or service charges provided that such employee has continuously worked at OSM's facility for sixty (60) days.

**Section 6.9**    In the event REMEDY requires vehicle access to OSM 's facility to serve an onsite subcontractor or other business operation, REMEDY and each of REMEDY representatives so requiring access shall (1) obtain a vehicle pass from OSM and (2) abide by the vehicle policy and all other policies contained in the Guidelines.

**Section 6.10**    REMEDY shall not subcontract or otherwise transfer its obligations under this Contract to another agency, subsidiary or otherwise, without first obtaining OSM's prior written consent. Failure to obtain such consent shall be deemed grounds for immediate termination of this Agreement.

**Section 6.11**    In the event of any dispute or litigation arising out of or in connection with this Agreement, the prevailing party in any settlement or judgment shall be entitled to receive reasonable attorney's fees from the non-prevailing party.

IN WITNESS WHEREOF, each party has executed this Contract as of the 8th day of November, 2001.


**REMEDY**                                    **OSM/Napa Pipe**

_____            _____
Anne M. Good                                   Raymond D. Miller
Vice President                                    Manager, Employment Practices
Remedy Intelligent Staffing                 OREGON STEEL MILLS, INC.


Attachments:

• OSM Orientation Book (2 Copies)


-6-

**EXHIBIT  C**

# EXHIBIT C



# TEMPORARY EMPLOYMENT
# SERVICES CONTRACT

This Contract is made and entered into by and between OREGON STEEL MILLS (OSM), a Delaware corporation, mailing address 1000 S.W. Broadway, Suite #2200; Portland, Oregon; and Remedy Intelligent Staffing (REMEDY), mailing address 9020 S. W. Washington Square Drive, Suite #200; Portland, Oregon 97223. The parties agree as follows:

## ARTICLE 1
## SCOPE OF WORK

**Section 1.1**   REMEDY shall, upon notification by OSM, furnish pre-screened applicants for temporary employment work assignments in the categories of office worker, production worker and maintenance worker. Acceptance or rejection of any such offered applicants shall be at the sole discretion of OSM.

**Section 1.2**   REMEDY shall perform pre-hire screening with respect to basic qualifications, work history, references and drug tests as specified in Section 6.4 below. OSM in its sole discretion shall determine the competency and qualifications of all applicants and employees furnished by REMEDY. The work direction and supervision for all temporary employees furnished by REMEDY shall be the sole responsibility of OSM. If OSM, in its sole discretion, determines that the employment or presence of a REMEDY employee is no longer required, or is detrimental to the performance of the work or to OSM's operations, REMEDY shall, upon notification by OSM, immediately terminate such employee's assignment at OSM.

**Section 1.3**   Temporary employees provided by REMEDY pursuant to contract shall at all times be considered primary, general employees of REMEDY, and secondary, special employees of OSM, it being the intent hereof that the worker's compensation benefits referred to in Section 5.2.1 shall be such temporary employee's sole remedies for bodily harm or death resulting from injury related to such employee's work for OSM, or any of its on-premises subcontractors. REMEDY represents and warrants that prior to providing each temporary employee for employment on OSM's premises, REMEDY shall have informed such employee of the exclusivity of worker's

-1-

 **TEMPORARY EMPLOYMENT
SERVICES CONTRACT**

compensation remedies, shall have provided such employee with worker's compensation information or pamphlets as required by the state statute as well as information on where, how and to whom job related illness/injury reports are to be made.

## ARTICLE 2
## COMPENSATION: PAYMENT

**Section 2.1**    OSM shall pay REMEDY the applicable direct labor rate plus a mark-up rate which shall be established by mutually agreed separate schedule. REMEDY shall pay each of their employees employed on OSM's premises not less than the mutually agreed upon hourly rate. REMEDY represents that the compensation provided for herein covers all costs of employment including without limitation with respect to federal, state and local taxes, other mandated contributions, worker's compensation and contractor's overhead and profit.

**Section 2.2**    REMEDY shall on a weekly basis deliver or cause to be delivered to the premises of OSM, payroll checks for each of its furnished employees who have not otherwise given REMEDY check distribution instructions (direct deposit only). Such checks shall be delivered no later than 1:00 P.M. to the Employee Resources department on Thursday of each week.

**Section 2.3**    REMEDY invoicing shall not be more often than weekly and all such invoices shall be accompanied by an hours/cost report in the form and content prescribed by OSM.  The verified invoices will be paid by OSM within fifteen (15) days of receipt of invoice.

## ARTICLE 3
## TERM OF AGREEMENT

**Section 3.1**    This Contract shall become effective on the date of execution and shall continue in full force and effect until such time as either party serves written notice

-2-



# TEMPORARY EMPLOYMENT
# SERVICES CONTRACT

on the other of their intent to terminate the agreement. Such notice shall, however, be given not less than thirty (30) days prior to the effective date of such termination.

## ARTICLE 4
## NON-EXCLUSIVITY

**Section 4.1**   Nothing contained herein shall be construed as limiting or restricting the right of the company to simultaneously contract with other contractors to provide temporary employees nor shall this Contract be considered a guarantee that all or any part of OSM's temporary help requirements will be obtained from REMEDY.

## ARTICLE 5
## INDEMNITY: INSURANCE

**Section 5.1**   REMEDY shall defend, protect, indemnify and save OSM, its directors, officers, agents and employees harmless from and against all claims, demands, costs (including attorney's fees) and causes of action for injury to or death of any temporary employee at or around OSM's property, including any temporary employee assigned to or working for any OSM subcontractor or any other entity doing business on OSM's premises, and for injury to or death of any other person, or for loss of or damage to any property, arising out of or connected in any way with the acts or omissions of REMEDY agents or employees, excluding liability for such injury, death, loss or damage arising from the sole negligence or willful misconduct of OSM or its employees or independent contractors or subcontractors.

**Section 5.2**   REMEDY shall, at all times while providing applicants for work, or while its employees are performing work of any kind whatsoever, maintain in full force and effect, in form and with carriers acceptable to OSM, the following policies of insurance:

**Section 5.2.1**   Worker's Compensation in compliance with applicable state law, and Employer's Liability of at least One Million Dollars ($1,000,000.00) per accident and, where applicable, insurance in compliance with any other statutory obligation

-3-



# TEMPORARY EMPLOYMENT
# SERVICES CONTRACT

whether federal or state, pertaining to the compensation of injured employees, the foregoing endorsed with waiver of subrogation against Napa Pipe; and

**Section 5.2.2**   General Comprehensive Liability, Automotive Bodily Injury Liability, Automobile Property Damage Liability, Bodily Injury Liability (other than automobile) Property Damage Liability (other than automobile) and contractor's Contractual Liability covering all liability assumed hereunder of not less of not less than One Million dollars ($1,000,000.00) per occurrence.

**Section 5.3**   The foregoing policies of insurance shall cover all operations of REMEDY under subcontract and name OSM as an additional insured and include a waiver of subrogation. Prior to providing services, REMEDY shall forward to OSM certificates of insurance evidencing not less than the above coverage.  Said certificates shall be mailed to OSM and shall include the following statement:

> **Thirty (30) days' written notice will be given to: Oregon Steel Mills; Attention: Patrick S. Collins; 14400 N. Rivergate Blvd.; Portland Oregon 97203, before any cancellation and/or material change in this policy shall become effective.**

# ARTICLE 6
# <u>GENERAL TERMS AND CONDITIONS</u>

**Section 6.1**   REMEDY shall not discriminate against any employee or applicant for employment because of race, color, sex, religion, age, natural origin, physical or mental disability, veteran's status, sexual orientation or any other legally protected status and REMEDY will take affirmative action to insure that applicants are selected and insofar as REMEDY actions control, employees are treated during their employment without regard to their race, color, sex, religion, age, national origin,

-4-



# TEMPORARY EMPLOYMENT
# SERVICES CONTRACT

physical or mental disability, veteran's status, sexual orientation or any other legally protected status.

Section 6.2    In the event REMEDY determines it necessary to advertise for prospective applicants, the cost of all such advertising shall be borne by REMEDY provided, however, in .no event shall OSM be in any way identified in such advertisement unless REMEDY first obtains approval from OSM.

Section 6.3    REMEDY shall counsel all prospective applicants and/or employees prior to dispatch to OSM with regard to their obligations to comply with all OSM safety rules as outlined in the OSM Contractor Safety Guidelines, OSM EEO and Prohibition of Harassment, Discrimination or Retaliation Policy, Drug & Alcohol Policy, Electronic Communications Policy attached hereto and made a part hereof.

Section 6.4    All applicants or employees furnished by REMEDY must, as a condition of employment, show proof of a recent (30 days or less) "clean" drug/alcohol screen. Background checks must include as a minimum: Social security number tracer, DMV printout, criminal background check for last seven years of residence (county and federal), work history and references.

Section 6.5    REMEDY employees who work continuously on OSM's premises shall, at REMEDY expense, receive a Baseline hearing test no later than 180 days from date first employed and annually thereafter.

Section 6.6    OSM shall provide each REMEDY employee with the following safety equipment: hard hat, safety glasses, ear plugs, leather gloves, metatarsal guards and all other personal protective equipment deemed necessary by OSM for the safe performance of the employee's job duties. REMEDY will cooperate with OSM by insisting on proper care and utilization of all issued safety equipment and in the event a REMEDY employee quits or terminates without returning issued equipment to OSM, REMEDY shall upon notification by OSM, use its best efforts to recover such unreturned items to include withholding payment for such items from employee's final monies due.

-5-



# TEMPORARY EMPLOYMENT
# SERVICES CONTRACT

**Section 6.7**    REMEDY shall comply with and shall encourage its employees to comply with the Guidelines attached hereto.

**Section 6.8**    OSM shall be free to recruit any temporary employee furnished by REMEDY In the event any such employee is placed on OSM 's direct payroll, there shall be no fee or service charges provided that such employee has continuously worked at OSM's facility for sixty (60) days.

**Section 6.9**    In the event REMEDY requires vehicle access to OSM 's facility to serve an onsite subcontractor or other business operation, REMEDY and each of REMEDY representatives so requiring access shall (1) obtain a vehicle pass from OSM and (2) abide by the vehicle policy and all other policies contained in the Guidelines.

**Section 6.10**    REMEDY shall not subcontract or otherwise transfer its obligations under this Contract to another agency, subsidiary or otherwise, without first obtaining OSM's prior written consent. Failure to obtain such consent shall be deemed grounds for immediate termination of this Agreement.

**Section 6.11**    In the event of any dispute or litigation arising out of or in connection with this Agreement, the prevailing party in any settlement or judgment shall be entitled to receive reasonable attorney's fees from the non-prevailing party.

IN WITNESS WHEREOF, each party has executed this Contract as of the 5th day of July, 2006.


REMEDY INTELLIGENT STAFFING          **OREGON STEEL MILLS**

_____          _____

Dave Bell                                          Raymond D. Miller
Director, Sales & Marketing                Manager, Employment Practices
Remedy Intelligent Staffing                OREGON STEEL MILLS, INC.

-6-



# TEMPORARY EMPLOYMENT
# SERVICES CONTRACT

Attachments:

- OSM Contractor Safety
- OSM EEO and Prohibition of Harassment, Discrimination or Retaliation
- OSM Drug & Alcohol Policy
- Electronics Communications Policy
- Billing Rate Memorandum

| BILLING RATE MEMORANDUM | | | | | |
|---|---|---|---|---|---|
| JOB DESCRIPTION | JOB GRADE | JOBCODE | WAGE RATE | BILL RATE (Straight Time) | MARKUP RATE |
| | | | | | |
| PORTLAND STEEL WORKS | | | | | |
| (Light Industrial Production) | 19 | VARIOUS | 10.00 | 14.80 | 48% |
| | 20 | VARIOUS | 11.00 | 16.28 | 48% |
| | 21 | VARIOUS | 12.00 | 17.76 | 48% |
| | 22 | VARIOUS | 13.25 | 19.61 | 48% |
| | 23 | VARIOUS | 14.50 | 21.46 | 48% |
| | 24 | VARIOUS | 16.00 | 23.68 | 48% |
| | | | | | |
| (Administration / Clerical) | 19 | VARIOUS | 10.00 | 14.60 | 46% |
| | 20 | VARIOUS | 11.00 | 16.06 | 46% |
| | 21 | VARIOUS | 12.00 | 17.52 | 46% |
| | 22 | VARIOUS | 13.25 | 19.35 | 46% |
| | 23 | VARIOUS | 14.50 | 21.17 | 46% |
| | 24 | VARIOUS | 16.00 | 23.36 | 46% |
| | | | | | |
| COLUMBIA STRUCTURAL TUBING | | | | | |
| (Light Industrial Production) | 20 | VARIOUS | 11.82 | 17.49 | 48% |
| | 21 | VARIOUS | 12.46 | 18.44 | 48% |
| | 22 | VARIOUS | 13.77 | 20.38 | 48% |
| | 23 | VARIOUS | 15.22 | 22.53 | 48% |
| | 24 | VARIOUS | 16.81 | 24.88 | 48% |
| | | | | | |
| (Administration / Clerical) | 20 | VARIOUS | 11.82 | 17.26 | 46% |
| | 21 | VARIOUS | 12.46 | 18.19 | 46% |
| | 22 | VARIOUS | 13.77 | 20.10 | 46% |
| | 23 | VARIOUS | 15.22 | 22.22 | 46% |
| | 24 | VARIOUS | 16.81 | 24.54 | 46% |
| | | | | | |
| All overtime hours will be billed at time and one-half at the markup rate of 1.36%. No shift differential pay or holiday pay is paid for any temporary agency worker. | | | | | |